Despins, Appellant, vs. The Chicago, Milwaukee & St. Paul Railway Company, Respondent.

*November 11 — December 15, 1899.*

*Railroads: Master and servant: Personal injuries: Negligence.*

Plaintiff, a brakeman, was injured while at the rear of the train assisting in switching cars. A signal was given by the conductor, which the engineer and brakeman at the tender understood to

mean to cut off *all* the cars, and which plaintiff understood to be to cut off the last car.   *Held*, that it being conceded that the engineer was guilty of no negligence in understanding and acting upon the conductor's signals, he was not guilty of negligence in giving his attention to the brakeman at the tender, who was cutting off all the cars, and in failing to see the signals of plaintiff, and was not bound, as a reasonable man, to anticipate that the plaintiff would put himself in a position of danger, where the increased speed of the train would be likely to do him injury.

APPEAL from a judgment of the circuit court for Brown county: S. D. HASTINGS, JR., Circuit Judge.   *Affirmed.*

Action to recover damages for injuries alleged to have been occasioned by the negligence of one of defendant's firemen, who was temporarily in charge of one of its locomotives.   The train crew were engaged in switching.   It is alleged that, while engaged in the discharge of his duties as brakeman, the plaintiff stepped between two moving cars to draw the coupling pin to cut off one of the cars; that, while so engaged, the fireman who was operating the engine negligently and carelessly increased the speed to such an extent as to make the discharge of that duty unnecessarily and unreasonably dangerous, and the plaintiff, being compelled to move with great haste, tripped against a spike carelessly left in the block of a switch, fell, and had his right leg so crushed as to require amputation.

The jury rendered a special verdict as follows: " *First Question.* Was the plaintiff injured April 4, 1896, while engaged in switching cars for the defendant at Marinette? *A.* Yes (By the court).   *Second Question.* Were the cars which the plaintiff was uncoupling at the time of his injury moving from a point near the sidewalk on the west side of State street to switch No. 3 at a speed which rendered the plaintiff's said work unreasonably dangerous.   *A.* Yes (By the court).   *Third Question.* Was Mullendyke, who was running the engine, guilty of negligence in pushing said cars so that they moved at that time at the speed they were going ?

*A.* Yes. *Fourth Question.* If your answer to the third question should be 'Yes,' then answer this: Was said negligence of said Mullendyke a proximate cause of the plaintiff's injury? *A.* Yes. *Fifth Question.* If you answer the fourth question 'Yes,' then answer this: Ought a man of ordinary intelligence and prudence, in Mullendyke's position, to have reasonably expected that, by pushing the cars at the speed at which he pushed them, he would have caused some such injury to the plaintiff as that sustained by him? *A.* Yes. *Sixth Question.* Was the defendant's track, at the place where the plaintiff was injured, rendered unnecessarily and unreasonably dangerous by reason of the manner in which the block in front of the split switch was spiked down? *A.* Yes. *Seventh Question.* If you answer the sixth question 'Yes,' then answer this: Was such condition of said track a proximate cause of the plaintiff's injury? *A.* Yes. *Eighth Question.* If you should answer the seventh question 'Yes,' then answer this: Would a man of ordinary intelligence and prudence, intrusted with the duty of putting said track in a reasonably safe condition at that place, have reasonably expected that its condition would have caused some such injury to an employee of said defendant as that sustained by the plaintiff? *A.* Yes. *Ninth Question.* Was the signal given by the conductor after the cars were over switch No. 1 a signal to cut off one car or a signal to draw the pin? *A.* To cut off one car. *Tenth Question.* Did Depow and Mullendyke understand the conductor's signal to be a signal to cut off all the cars, and act upon that understanding? *A.* Yes (By the court, with consent of both parties). *Eleventh Question.* Ought a man of ordinary intelligence and prudence, in Mullendyke's position, to have known or expected that the plaintiff was on the ground between the cars, engaged in an attempt to cut off one car? *A.* Yes. *Twelfth Question.* Was there a slight want of ordinary care on the part of the plaintiff, which contributed to his injury,

in going or remaining between the moving cars as he did? *A.* No. *Thirteenth Question.* Would a person of ordinary care and prudence, in the plaintiff's situation, have remained between the cars when he went in the second time, after he discovered that the pin was stuck? *A.* Yes. *Fourteenth Question.* At what amount do you assess the plaintiff's damages? *A.* $6,500."

The plaintiff moved for judgment on the verdict, which was denied. The defendant made a motion to strike out certain answers as against the evidence, and to change certain other answers in accordance with the uncontradicted evidence. After due consideration, the court entered the following order: "It is ordered that the special verdict be amended as follows, to wit: (1) The answer to the fourth question of the special verdict is stricken out as contrary to the uncontradicted evidence. (2) The answer to the fifth question of the special verdict is stricken out as contrary to the uncontradicted evidence, and at variance with the tenth finding of the special verdict entered by consent of the parties. (3) The answers to the sixth, seventh, and eighth questions of the special verdict are stricken out, and in lieu thereof is inserted the answer 'No' to each of such questions, as in accordance with the uncontradicted evidence. (4) The answer to the eleventh question of the special verdict is stricken out as contrary to the uncontradicted evidence, and at variance with the tenth finding of the special verdict entered by consent of the parties, and said question is hereby answered 'No.' (5) The answer to the twelfth question of the special verdict is stricken out as contrary to the uncontradicted evidence, and said question is hereby answered 'Yes.' (6) The answer to the thirteenth question of the special verdict is stricken out as contrary to the uncontradicted evidence, and the same is hereby answered 'No.' It is further ordered that, upon the verdict as so amended, and upon the pleadings, records, and uncontradicted evidence, the defendant is

entitled to judgment dismissing the complaint, and for costs. Let judgment be entered accordingly."

Judgment was thereupon entered for defendant, and the plaintiff appeals.

For the appellant there was a brief by *Wigman & Martin*, and oral argument by *P. H. Martin.*

For the respondent there was a brief by *Greene, Vroman, Fairchild, North & Parker*, and oral argument by *H. O. Fairchild.*

BARDEEN, J. The facts upon which defendant's negligence is predicated may be stated as follows: The engine had gone up a side track, and coupled to three cars. These cars were drawn upon the main track. Depow, one of the brakemen, climbed on top of the cars, and plaintiff hung on the ladder of the rear car. As the cars were being pulled up to the switch, Karn, the conductor, gave a signal. Plaintiff read the signal to cut off *one* car. Depow understood it to be a signal to cut off *all* the cars, and so repeated it to Mullendyke, who was acting engineer. After the cars had passed the switch, the plaintiff left the cars, threw the switch, and, as they came by him, went in and drew the pin of the last car, came out, and, with his back to the engine, gave a slow-down signal. While running beside the moving cars, he noticed that the pin he had drawn had slipped back into place. He immediately went between the cars, and attempted to draw it, but had some difficulty, on account of its being bent. As he was at work attempting to draw the pin, the speed of the car had been considerably increased. While so running between the cars, his foot hit something, presumably a spike holding the blocking to a switch, and he was thrown down and injured. Mullendyke saw the signal given by Karn, and understood it to be a signal to cut off all the cars. After the cars had been pulled beyond the switch, Depow, who was riding on the top of the cars,

slid down the brake rod next to the tender, and pulled the pin. Plaintiff, after throwing the switch, gave the kick signal, and, as Depow slid down the brake rod, Mullendyke gave his attention to him. Depow also gave a quick-kick signal. In response to this signal, Mullendyke set his engine in rapid motion, and continued it until plaintiff was injured. The element of negligence which is said to render the defendant liable consists in the failure of Mullendyke to see and observe the signals given by plaintiff. The court charged the jury as follows: "Now, the particular in which he is charged with being negligent is the speed of the train — the cars — from the time the plaintiff claims he went in to make the second cut and the time the plaintiff was injured. I say it is not claimed that any act on the part of Mullendyke up to that time was negligence, or, in other words, it is conceded that he was not negligent in taking the signal from Mr. Depow, or in reading the signal given by Mr. Karn, the conductor, and acting upon it; and he was not negligent up to the time it is claimed that he should have stopped the train, or slacked the speed, in response to the signal that it is claimed *Mr. Despins* gave him." This charge was not excepted to, and the fact stated is clinched by the tenth finding, answered by the court by consent of counsel, that both Depow and Mullendyke understood the conductor's signal to be a signal to cut off all the cars, and acted upon such understanding. Thus it appears to be a fact conceded and found that Mullendyke understood that *all* the cars were to be cut off and kicked back, and acted upon such understanding. With such understanding in mind, he would very naturally turn his attention, as he did, to the brakeman charged with the duty of cutting off the cars. It was from him that signals were to be expected. There was nothing in the circumstances that would lead him to believe or expect that the plaintiff would go between the cars. He supposed, as he had a right to suppose, that plaintiff intended .

Despins vs. The Chicago, Milwaukee & St. Paul R. Co.

to "ride the cars down." With the fact in mind that Depow was to cut off the cars from the tender, it was his absolute duty to direct his attention to him. He was not expecting a signal from plaintiff, and had no reason to expect one. He had no reason to anticipate that plaintiff would put himself in a place of danger, or that he would do anything different from his duty to mount the cars, and ride them down the main track. But, even if he had seen plaintiff's signal, there was nothing in the situation that would have led him to refer it to any cut attempted to be made by him. It would have conveyed no other idea than that the cut had been made, and hence the speed with which the cars were being kicked back would have been a matter of indifference. These facts are so conclusive that it leaves the plaintiff's case without any substantial foundation. To warrant a recovery, there must be negligence proven, and such negligence must have been the proximate cause of the injury. Plaintiff's case lacks both these important elements. It being conceded that the engineer was guilty of no negligence in understanding and acting upon the conductor's signals, there was nothing in the case, as we view it, which should have led him, as a reasonable man, to anticipate that the plaintiff would put himself in a position of danger, where the increased speed of the train would be likely to do him injury. This conclusion reaches the vitals of the case, and renders a discussion of other questions raised unnecessary. The action of the trial court was fully justified.

*By the Court.*— The judgment of the circuit court is affirmed.

DODGE, J., dissents.